Owen, C. J.,
concurs in the propositions of the syllabus, but dissents from the judgment of reversal for the reasons stated in the following dissenting opinion:
Was Mrs. Osborne present before the notary who certified to her pretended acknowledgment ? This was the one commanding issue which the court below was called upon to try. If the court clearly believed she was not, this ended the case, and in her favor. No witness swore she was. The notary, as stated by the majority, did not swear it. It is true he was *8 allowed to testify that he never certified to the acknowledgment of deeds without the personal presence before him of the signers. But his credit was affected by impeaching testimony upon this very question, which, if believed by the court, left it at liberty wholly to discredit his testimony. As soon as the plaintiff was informed that the notary had certified to her presence and acknowledgment before him, and before any suggestion to the notary of litigation, she waited upon him with. her counsel. Both the plaintiff and her counsel testified, against his denial, that the notary told them that if he knew the parties and believed it was all right, he might have, or had certified acknowledgments without the personal presence of the parties. It appeared that Comfort Adams, the grantee, was present at the time the notary certified to the pretended acknowledgment, and at the time when, if at all, the plaintiff, must have been present; but, while he was gravely interested in observing the transaction, he does not remember and does not testify that he saw her present on any such occasion. The fact is, and this fact appears strikingly conspicuous in the record before us, that the testimony of Mrs. Osborne and her husband that she was not present before the notary at all, but signed the deed at the house in the presence only of her husband, and with an utterly erroneous opinion of its contents, is absolutely unoontradieted by any witness upon the trial! Much importance is sought to be attached to the question whether Mrs. Osborne or her husband signed the deed first. This fact is, in itself, immaterial. It is material only as it reflects upon the credit of the husband -who testified that his wife signed the deed first. The wife does not undertake to say which signed it first — convincing proof that she was swearing upon her own memory and conscience, and not upon any suggestion of her husband. It is true that witnesses were introduced by the defendant below, who testified that, in their opinions, the wife signed last. Among these was an expert (who stated that he had, in his day, made ten thousand ink examinations) who, after a patient examination of nine days, with the aid of a microscope of fabulous power, was able to say that, in his opinion, the wife’s name was written last. On the contrary, *9 the plaintiff offered witnesses, including two experts, apparently as candid, vdio testified also with the aid of powerful microscopes, that, in their opinions, the wife’s name was written first. The trial court possessed peculiar advantages over this court. It saw and heard the witnesses. It had the benefit of many tests of credit and means of weighing testimony which are not open to this court.
While it is true that the confessed turpitude of Osborne, the husband of a victimized wife, is a fact which called upon the court to scrutinize his testimony with great caution, it is equally true that his credit, and the extent to which he was to be believed or disbelieved, was a question addressed peculiarly' to the trial court. ITow can we say that that court did not, by this rule, weigh his testimony? We simply cannot say it. Mrs. Qsborne and her husband both’swore, without contradiction from any witness, that she was not before the notary. If her appearance on the witness stand was correspondingly as favorable to her credit as her testimony appears upon the record before us, it is not easy to see how the" trial court could disbelieve her, or how this court can say that it erred in believing her. If that court clearly believed her, it had but one course open to it, and that was to render the judgment which we are asked to reverse. When the court was clearly convinced that she was not before the notary, all presumptions in favor of his certificate were overcome. This court must say, before reversing the judgment, either that the trial court rendered its judgment without believing that the plaintiff was not before the notary, or that it erred in so believing. It would seem, from the opinion of the majority, that they are persuaded that the trial court, did not believe — -was not clearly convinced of this fact; that it acted upon a mere preponderance of the evidence. Clearly this is not enough. Upon this proposition there is no discord among the members of this court. We are also together upon the proposition that, while we are not required to, and will not, weigh the evidence, with a view to determining whether it supports a judgment under review, we may and will, in a proper case, look to the whole record, and if it appears clear and manifest from it that the trial court *10 acted upon an erroneous rule of evidence, after resolving every doubt and every presumption in favor of its judgment, we have power to correct the error. The division of the court in the present case is because the writer of this dissent cannot say, either that the trial court adopted the wrong rule of evidence, or that it misapplied the evidence to the correct rule. On the contrary, it seems clear to the writer, from the record before us, that the court below was abundantly justified in reaching a clear conviction from the proof before it that the plaintiff below was not before the notary who certified, but would not swear, to her presence before him. The court is not unanimous in the criticism upon the manner in which the plaintiff’s case was tried below. It is true that her case would have been strengthened by direct proof that she had Arnold’s ink at her residence. But the ink she swore she used there was pronounced by all the experts to be Arnold’s. Substantially the fact was shown, and the omission partially healed. If the plaintiff was not before the notary who certified she was, his certificate was the fruit of a felony; it was a forgery. Johnston v. Wallace, 53 Miss. 338; 18 Fed. Rep. 366. Besides, he was most gravely interested in sparing himself from the imputation of making a false certificate. His sureties on his official .bond were liable for the wrong. Besides, it appeared that he procured his commission not for general notarial business, but to serve the firm in whose emjfloy lie was (of which the grantee in the deed was a member). In the light of these considerations, the plaintiff’s failure to ask the notary to go upon the witness stand to confess himself a forger and a most unfaithful officer and servant, would not seem to deserve very severe criticism, or suggestions of mismanagement of her case. Conceding the worst that has been said of Osborne, it is not easy to see why his turpitude should be visited upon his victim, Mrs. Osborne. There is at least one benefit to flow from a reversal of the judgment below. It furnishes this court occasion unanimously to remove, for the future, all doubt concerning the true rule of evidence to be adopted in this as well as in other like cases.